## U.S. BANKRUPTCY COURT
### District of South Carolina

Case Number:  **23-01102-eg**

## Order

The relief set forth on the following pages, for a total of 23 pages including this page, is hereby ORDERED.

---

**FILED BY THE COURT**
**08/17/2023**



Entered: 08/17/2023

Elisabetta G. M. Gasparini
US Bankruptcy Judge
District of South Carolina

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 23-01102-EG |
| Palmetto Interstate Development II, Inc., | Chapter 11 |
| Debtor(s). | **ORDER GRANTING SUMMIT SHORES LENDER, LLC'S MOTION TO DISMISS** |

**THIS MATTER** came before the Court for a hearing on August 3, 2023, to consider the

Motion to Dismiss this case pursuant to 11 U.S.C. §§ 105 and 1112 filed by Summit Shores Lender,

LLC ("Summit Shores")[1] and the Objection thereto filed by Palmetto Interstate Development II,

Inc. ("Debtor").[2]   The hearing was attended by Leonard Ray Watts ("Watts"), the Debtor's

Chairman of the Board and 100% shareholder; James Marshall Biddle, Esq. ("Biddle"), the

Debtor's President; Robert H. Cooper ("Debtor's Counsel"); and Tara Nauful ("Summit Shores'

Counsel").   At the hearing, Watts and Biddle testified under oath, and exhibits submitted by

Summit Shores—including a set of facts to which Summit Shores and Debtor stipulated and which

are incorporated below—were admitted into evidence without objection.   After careful

consideration of the facts, applicable law, and arguments of counsel, the Court grants the Motion

to Dismiss, declines to retain jurisdiction over the related adversary proceedings, and retains

jurisdiction over the *Motion for Sanctions for Willfully Violating the Automatic Stay* ("Motion for

Sanctions") filed by the Debtor on July 19, 2023.[3]  The Court enters the following findings of fact

and conclusions of law pursuant to Fed. R. Civ. P. 52.[4]

---

[1] ECF No. 20, filed May 26, 2023.

[2] ECF No. 23, filed June 16, 2023.  An Addendum to the Objection was filed on July 31, 2023 (ECF No. 67).

[3] ECF No. 45.

[4] This rule is made applicable to adversary proceedings pursuant to Fed. R. Bankr. P. 7052.  The facts related to Enterprise Bank of South Carolina have been asserted by Debtor and are provided merely to explain the background of this matter, and, while they appeared to be largely uncontested by Summit Shores' counsel at the August 3, 2023 hearing, shall not be construed as findings of fact for purposes of Fed. R. Civ. P. 52 and Fed. R. Bankr. P. 7052.

## FACTS

Debtor is a corporation organized and existing under the laws of the State of South Carolina and owns "single asset real estate" as that term is defined by 11 U.S.C. § 101(51B). Biddle is the Debtor's registered agent and has been Debtor's President since approximately January 2023. Watts, a real estate developer who owns several other companies, is Debtor's Chairman of the Board and its 100% shareholder. Debtor claims an interest in the following parcels of real property located in the Summit Shores development of Myrtle Beach, SC (the "Properties"):

(1)    1.5 acres of "raw land" located at N Hwy 17 Bypass, Lot A-1, Tax Map #180002283, which is owned by Debtor in fee simple and claimed by Debtor to be worth $5.1 million;

(2)    5.58 acres of "raw land" located at N Hwy 17 Bypass, Lot AA, Tax Map #180002286, which is owned by Debtor in fee simple and claimed by Debtor to be worth $5.75 million;

(3)    1.8 acres of "raw land" located at N Hwy 17 Bypass, Lot C-1, Tax Map #180002288, which is owned by Debtor in fee simple and claimed by Debtor to be worth $3.05 million;

(4)    3.82 acres of "raw land" located at N Hwy 17 Bypass, Lot C-2, Tax Map #180002289, which is owned by Debtor in fee simple and claimed by Debtor to be worth $3.35 million;

(5)    3.33 acres of "raw land" located at N Hwy 17 Bypass, Lot AA-1, Tax Map #180002004, which is owned by Summit Shores, but the Debtor claims an equitable interest therein and asserts the property is worth $5.25 million;

(6)    6.29 acres of "raw land" located at N Hwy 17 Bypass, Lot A, Tax Map #180002284, which is owned by Summit Shores, but the Debtor claims an equitable interest therein and asserts the property is worth $9.75 million; and

(7)    4.25 acres of "raw land" located at N Hwy 17 Bypass, Lot B, Tax Map #180002274, which is owned by Summit Shores, but the Debtor claims an equitable interest therein and asserts the property is worth $9.05 million.

The factual background regarding Debtor's incorporation and the history involving the Properties spans over a decade and is extensive. While it is not crucial to delve into what has

transpired over the past 10 years in excruciating detail for purposes of ruling on the Motion currently before this Court, based on the pleadings filed and documents submitted into evidence, the facts can be summarized as follows:

### A.  *State Court Litigation*

Watts and some of his companies initially owned all seven Properties.  Subsequently, he sold three parcels ("First Parcels") to individuals who obtained financing from, and granted mortgages to, Enterprise Bank of South Carolina ("Enterprise").  They defaulted on their loans with Enterprise, and in 2013, Enterprise filed a foreclosure action in the Horry County, South Carolina Court of Common Pleas (the "State Court") to foreclose its mortgages on the First Parcels (No. 2013-CP-26-2410).  Debtor sought financing from Summit Shores to buy the First Parcels and settle Enterprise's foreclosure action.  Summit Shores loaned Debtor $8.5 million, and, as a condition to the extension of funds, it required liens on the First Parcels, the release of Enterprise's liens thereon, and Debtor to be incorporated.  All the Properties were eventually transferred to Debtor, and Summit Shores was granted liens on them.  On June 19, 2014, in consideration for the loan**,** Debtor executed and delivered to Summit Shores a Promissory Note in the original principal amount of $8.5 million, a Mortgage, and other documents, pursuant to which Summit Shores has a first mortgage lien on all assets of the Debtor.[5]  Subsequently, Enterprise was paid the amount required for it to release its liens on the First Parcels; nonetheless, it proceeded with its foreclosure action, obtaining title to the First Parcels as the successful bidder at the foreclosure sales.

Debtor did not timely make—nor has it ever made—payments on the Promissory Note to Summit Shores.  Consequently, on March 4, 2015, Summit Shores commenced a foreclosure action against Debtor and Watts in the State Court captioned *Summit Shores Lender, LLC v.*

---

[5] Watts is a guarantor of this obligation.

*Palmetto Interstate Development II, Inc.*, No. 2015-CP-26-01729 (the "Foreclosure Action") to foreclose its liens on the other four Properties ("Second Parcels"). Biddle, an attorney licensed in South Carolina, represented Debtor and Watts, as the guarantor of the debt, in the Foreclosure Action.

In 2016, Summit Shores filed a separate lawsuit in the State Court against Enterprise and other defendants related to Enterprise's failure to release its liens on the First Parcels and continuation of its foreclosure action (No. 2016-CP-26-02163) ("Fraud Action"). In 2022, a jury returned a verdict against Enterprise, awarding Summit Shores nearly $16 million in actual and punitive damages. Following the verdict, Summit Shores and Enterprise entered a sealed settlement.

The Foreclosure Action remained dormant from April of 2016 to November of 2022. On February 7, 2023, Summit Shores filed a Motion for Summary Judgment in the Foreclosure Action, which Debtor and Watts opposed, asserting that, because it was already made whole by the $16 million verdict in the Fraud Action, Summit Shores should be precluded from proceeding with foreclosure on the Second Parcels and directed to enter a satisfaction of its mortgage. On March 9, 2023, a hearing was held on Summit Shores' Motion for Summary Judgment, and the matter was taken under advisement. On March 16, 2023, a Staff Attorney for the Master-in-Equity presiding over the Foreclosure Action emailed counsel for Summit Shores and Debtor advising them that the Master-in-Equity would grant partial summary judgment to Summit Shores. The email requested that Summit Shores' counsel prepare a proposed order "granting partial Summary Judgment to [Summit Shores] for a judgment of foreclosure leaving open the issue of amounts due

to be resolved in mediation or determined by the court with a trial. Mediation is to be scheduled within the next 30 days. A trial date is also to be scheduled when the mediation is scheduled."[6]

**B.  *Debtor's Bankruptcy Filing***

On April 17, 2023 (the "Petition Date"), Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. Debtor admits that it filed this case to invoke the automatic stay of 11 U.S.C. § 362 to stay the Foreclosure Action and file the two adversary proceedings against Summit Shores described below. On April 18, 2023, the Master-in-Equity in the Foreclosure Action entered an Order granting, in part, Summit Shores' Motion for Summary Judgment. Because the Order was entered after the Petition Date, the Order was subsequently vacated by consent.

Debtor is a "debtor in possession" as that term is defined by 11 U.S.C. § 1101(1), and no trustee has been appointed. On May 15, 2023, Debtor filed schedules and statements.[7] The only assets listed in the schedules are the Properties,[8] and Debtor owns no other assets—tangible or intangible. The parties agree the Second Parcels have never generated any revenue and cost money to maintain. Summit Shores is Debtor's only secured creditor, and the parties stipulate that Summit Shores' claim is approximately $20,707,964.39.[9] However, Debtor disputes it owes this amount through its adversary proceedings described below. Debtor's only unsecured creditor thus far is the Internal Revenue Service ("IRS"), which has filed a claim for $500.00, with $200.00 claimed as priority.[10]

Other than funds advanced or loaned by Watts, Debtor has no income or sources of revenue. The filing fee and the retainer paid to Debtor's Counsel for the bankruptcy representation

---

[6] ECF No. 20, Ex. C.
[7] ECF No. 14.
[8] The First Parcels, while currently titled in the name of Summit Shores, are also listed on Schedule A.
[9] Summit Shores timely filed a Proof of Claim for this amount on August 15, 2023.
[10] The deadline for non-governmental creditors to file claims is August 21, 2023, and the deadline for governmental creditors to file claims is October 16, 2023.

was paid by Watts.  Debtor has never had any employees other than its principals.  The real estate

taxes on the Second Parcels have been paid by Summit Shores.

On May 22, 2023, at the meeting of creditors pursuant to 11 U.S.C. § 341, Biddle testified

that Debtor's plan was to reorganize through its pursuit of adversary proceedings against Summit

Shores to regain title to the First Parcels and cease the Foreclosure Action on the Second Parcels,

with the ultimate goal of developing the Properties.  To date, Debtor has filed three Monthly

Operating Reports covering the period from the Petition Date to the end of June 2023,[11]

confirming that Debtor has no employees, no cash receipts or disbursements, no insurance, and

only holds $100.00 in a bank account—the only bank account Debtor has ever had—which was

opened post-petition with Watts' funds.

### C.  *Filings in the Bankruptcy Case*

On July 13, 2023, Debtor filed a Plan[12] and Disclosure Statement.[13]  The Plan classifies

creditors into six classes[14] but acknowledges that the only creditor treated is Summit Shores,

classified as Class 3.  More specifically, the Plan proposes the following treatment:

> Whether or not Summit Shores Lender, LLC is or is not a secured creditor, and if
> it is what is the value of such security interest remains to be determined in the view
> of the debtor.  The outcome of the two adversarial proceedings should determine
> much of that issue.  The debtor will amend the Disclosure Statement and Plan
> accordingly, based upon that outcome.

Plan at Art. XII (Class 3).

As to Debtor's intent going forward, the Plan provides:

> [I]t is the further development of these seven parcels upon which the [D]ebtor
> intended to build a combination of residential and commercial structures that will

---

[11] ECF Nos. 18, 36, and 37.
[12] ECF No. 38.
[13] ECF No. 39.
[14] The classes proposed in the Plan are: (1) Administrative Claims, (2) Priority Claims, (3) Secured Claims, (4) Judgments and Mechanic's Liens, (5) Unexpired Leases and Executory Contracts, and (6) General Unsecured Creditors.

> make up a community of homes, stores, restaurants and other such.  The [D]ebtor's owner, Leonard Ray Watts has already  invested between [$]1.5. . .and [$]2.5 million. . .into this venture, and anticipates obtaining financing for the entire project, but only after the current litigation has ended as no investor wants to loan money on a project that is currently tied up in litigation. . . .The debtor's principals fully intend to pick up where they left off to consummate the original plan for the subdivision as there has been much interest expressed among members of the community related to this venture.  Moreover, [Leonard] Ray Watts has spoken to potential investors from Miami to New York regarding the project.

Plan at Art. XIV; *see also* Disclosure Statement at p. 8.

On July 18, 2023, Summit Shores filed a Motion for Relief from Stay[15] to continue the Foreclosure Action to which Debtor filed an Objection.[16]  A hearing on that matter is currently scheduled for August 31, 2023.  On July 19, 2023, Debtor filed the Motion for Sanctions alleging parties other than Summit Shores willfully violated the automatic stay of 11 U.S.C. § 362 by requesting, post-petition, that the State Court allow them to levy upon and sell Watts' shares in Debtor to satisfy a pre-petition judgment against him.[17]  The Motion for Sanctions further requests relief against the State Court for granting the requested relief.  The hearing on the Motion for Sanctions is scheduled for August 31, 2023.  On August 16, 2023, Debtor filed an Addendum to the Disclosure Statement shedding additional light on the State Court litigation and the adversary proceedings commenced in this Court.[18]  The Addendum states:

> The [D]ebtor has had other offers that range from an outside party purchasing the entire project to funding a substantial amount to "back" the project. . . .Palmetto's owner, Leonard Ray Watts, and its corporate counsel, James Marshall Biddle, are discussing a number of options with various investors and hedge fund investors to determine its next course of action.  *However, none of that can come to fruition until and unless the litigation with Summit is ended in which case one of the various options can be part of a confirmed chapter 11 plan of reorganization.*

---

[15] ECF No. 41.
[16] ECF No. 62, filed July 28, 2023.  On August 17, 2023, Debtor filed an Addendum to the Objection (ECF No. 76).
[17] ECF No. 45.
[18] ECF No. 73.

Addendum to the Disclosure Statement at p. 6-7 (emphasis added).

### D. *Adversary Proceedings*

On July 28, 2023, Debtor filed two adversary proceedings against Summit Shores (the "Adversary Proceedings").[19]  The Adversary Proceedings requests the Court: (1) require Summit Shores to cease the Foreclosure Action (Adv. Pro. No. 23-80043-eg); (2) require Summit Shores to immediately turnover to Debtor the First Parcels (Adv. Pro. No. 23-80044-eg); and (3) deem Summit Shores' claim satisfied based on the $16 million award it received in the Fraud Action (both adversary proceedings).  The factual and legal grounds for relief in both complaints are nearly identical to those asserted in Debtor and Watts' Memorandum in Opposition to Summit Shores' Motion for Summary Judgment in the Foreclosure Action, though the complaints contain some additional legal grounds, including some that are relevant only in the bankruptcy context (*e.g.*, turnover of property of the estate).

### E. *Motion to Dismiss*

In the Motion to Dismiss, Summit Shores seeks dismissal of the case pursuant to 11 U.S.C. § 1112(b).  Summit Shores argues that Debtor is not the type of going concern or potentially viable business that Chapter 11 was designed to protect; rather, Debtor filed the case merely to invoke the automatic stay, stall the Foreclosure Action, and, more specifically, the imminent entry of an order by the Master-in-Equity granting summary judgment in Summit Shores' favor.

In its Objection, Debtor contends it is a going concern, and "[s]imply because it has had its assets taken from it by those who would seek an unjust enrichment for themselves, and to do so by improper means, does not change that fact."[20]  In its Addendum to Objection, Debtor states the belief of its principals and counsel that its attorney fees for the litigation with Summit Shores

---

[19] Adv. Pro. Nos. 23-80043-eg and 23-80044-eg.
[20] ECF No. 23, ¶ 49.

would be lower in bankruptcy and that "the federal bankruptcy court enjoys a faster track of litigation than the courts outside that system"; thus, litigating the matter in this Court would encourage investors—who have as yet been uninterested in property involved in litigation—to consider lending to develop the Properties.

The Court held a hearing on the Motion to Dismiss on August 3, 2023.  At the hearing, Watts testified under oath, stating that Debtor's intention was and remains to build a "mixed use commercial and residential" development.  He further testified that over the years he had invested around $1.5 million to clear the property; build a Department of Transportation bridge as a means of ingress and egress; conduct traffic light studies and obtain approval for a traffic light; and conduct engineering studies regarding water, sewage, roadways, and Federal Aviation Administration height requirements.   Watts acknowledged, however, that no vertical improvements are on the Properties, and nothing—other than monthly "cleaning"—had been done on the Properties in the past five years.

Watts also acknowledged that Debtor did not have a commitment from a lender to fund the project in place, but asserted Debtor could acquire one "in a couple of days" once the adversary proceedings were concluded and Debtor obtained clear title to the Properties.  Biddle, who also testified under oath, stated that no lenders would be interested in investing in the Properties until the litigation and title issues are resolved.  When asked by Summit Shores' Counsel if Debtor could pay the debt to Summit Shores in full, Watts indicated he "probably could move things around if [he] needed to and get that accomplished, although [he] would not because [he feels] it's a very unjust amount."  In closing, Debtor's Counsel stated, "what we want in the Bankruptcy Court is a fast-track, judicially economic manner in which to end this" and asserted that Debtor would incur

less attorney fees in this Court than in state court because cases are decided more expeditiously in

this Court and typically multiple attorneys are involved in state court.

### DISCUSSION & CONCLUSIONS OF LAW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157, this

matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and the Court may enter a final

order.  The Court is presented with two issues: (1) whether this case should be dismissed pursuant

to 11 U.S.C. § 1112; and (2) if it is dismissed, whether the Court should retain jurisdiction over

any other matters in this case or over the Adversary Proceedings.  For the reasons stated below,

the Court will dismiss this case, decline to retain jurisdiction over and dismiss the Adversary

Proceedings, and retain jurisdiction over the Motion for Sanctions.

### I.        DISMISSAL UNDER 11 U.S.C. § 1112

11 U.S.C. § 1112(b)(1) provides:

> Except as provided in paragraph (2) and subsection (c), on request of a party in
> interest, and after notice and a hearing, the court shall convert a case under this
> chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is
> in the best interests of creditors and the estate, for cause unless the court determines
> that the appointment under section 1104(a) of a trustee or an examiner is in the best
> interests of creditors and the estate.

For purposes of § 1112(b), the term "cause" includes "substantial or continuing loss to or

diminution of the estate and the absence of a reasonable likelihood of rehabilitation" and "gross

mismanagement of the estate."  11 U.S.C. § 1112(b)(4)(A)-(B).  Even though it is not listed in the

statute, bad faith in filing the petition may constitute "cause" for purposes of § 1112(b).  *Carolin

Corp. v. Miller*, 886 F.2d 693, 700 (4th Cir. 1989).  "The right to file a Chapter 11 bankruptcy

petition is conditioned upon the debtor's good faith—the absence of which is cause for summary

dismissal."  *In re Premier Automotive Servs., Inc.*, 492 F.3d 274, 279 (4th Cir. 2007) (citing

*Carolin*, 886 F.2d at 698). "[A] good faith requirement prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes." *Id.* (internal quotations omitted) (quoting *Carolin*, 886 F.2d at 698). "The good faith standard also 'protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (*i.e.*, avoidance of liens, discharge of debts, marshaling and turnover of assets) available only to those debtors and creditors with clean hands.'" *Id.* (quoting *Carolin*, 886 F.2d at 698).

In the Fourth Circuit, a party moving to dismiss a Chapter 11 case as being filed in bad faith must show (1) objective futility and (2) subjective bad faith. *Id.* at 279-80 (citing *Carolin*, 886 F.2d at 700-01). "The objective test focuses on whether there exists the realistic possibility of an effective reorganization." *Id.* at 280 (internal quotation marks and citations omitted). Put another way, the objective test "concentrate[s] on assessing whether 'there is no going concern to preserve . . . and . . . no hope of rehabilitation, except according to the debtor's terminal euphoria.'" *Carolin*, 886 F.2d at 701-02 (internal quotation marks omitted) (quoting *Little Creek Dev. Co. v. Commonwealth Mortg. Corp. (In the Matter of Little Creek Dev. Co.)*, 779 F.2d 1068, 1073 (5th Cir. 1986)). "The objective futility requirement is designed to further the statutory objective of reviving the debtor[.]" *Minority Equity S'holders of Yachting Connections, Inc. v. Resol. Tr. Corp. (In re Yachting Connections, Inc.)*, No. 92-1493, 1992 WL 372947, at *1 (4th Cir. Dec. 18, 1992) (citation omitted). "The subjective test asks whether a Chapter 11 petition is motivated by an honest intent to effectuate reorganization or is instead motivated by some improper purpose." *Premier*, 492 F.3d at 280 (citation omitted). "Subjective bad faith is shown where a petition is filed to abuse the reorganization process, or to cause hardship or to delay creditors by resort to the

11

Chapter 11 device merely for the purpose of invoking the automatic stay." *Id.* (internal quotation marks and citations omitted).[21]

No single factor is determinative of the bad faith inquiry, and the Court must examine the totality of the circumstances. *Carolin*, 886 F.2d at 701. "The overall aim of the twin-pronged inquiry must of course be to determine whether the purposes of the Code would be furthered by permitting the Chapter 11 petitioner to proceed past filing." *Id.* "[T]hough separate inquiries into each are required, proof inevitably will overlap. Evidence of subjective bad faith in filing may tend to prove objective futility, and vice versa." *Id.* "The *Carolin* court made clear that the burden of establishing this two-prong requirement is very high." *In re Dunes Hotel Assocs.*, 188 B.R. 162, 168 (Bankr. D.S.C. 1995). "The power to dismiss a bankruptcy petition at the outset of a case 'is obviously one to be exercised with great care and caution. Decisions denying access at the very portals of bankruptcy, before an ongoing proceeding has even begun to develop the total shape of the debtor's situation, are inherently drastic and not lightly to be made.'" *In re Bestwall LLC*, 605 B.R. 43, 48 (Bankr. W.D.N.C. 2019) (quoting *Carolin*, 886 F.2d at 700).

Although the totality of unique circumstances of each case must be examined in making the bad faith inquiry, there is often a typical pattern to Chapter 11 petitions filed in bad faith: (1)

---

[21] There has been some dissonance in Fourth Circuit case law over the years as to whether both prongs must be demonstrated by the party seeking dismissal. Most cases reviewed indicate that both prongs must be met to warrant dismissal. *See Carolin*, 886 F.2d at 700-01; *In re Coleman*, 426 F.3d 719, 727-28 (4th Cir. 2005); *In re Aronowitz Del. 2 Fam. Ltd. P'ship*, No. 21-50464, 2021 WL 4823520, at *4 (Bankr. M.D.N.C. Oct. 15, 2021); *In re Paolini*, 312 B.R. 295, 311 (Bankr. E.D. Va. 2004); *Dunes Hotel Assocs.*, 188 B.R. at 168. Other cases indicate that, at least in certain circumstances, a Chapter 11 case may be dismissed for bad faith upon a showing of only one prong. *See Premier*, 492 F.3d at 280; *In re Carter*, 500 B.R. 739, 746 (Bankr. D. Md. 2013); *In re Dunes Hotel Assocs.*, No. 94–75715, 1997 WL 33344253, at *8 (Bankr. D.S.C. Sept. 26, 1997), *aff'd sub nom. Dunes Hotel Assocs. v. Hyatt Corp.*, 245 B.R. 492 (D.S.C. 2000). This Court has recently held, and the Fourth Circuit has recently confirmed, that *both* prongs must be demonstrated by the party seeking dismissal. *See In re Auto Money North LLC*, 650 B.R. 245 (Bankr. D.S.C. 2023); *In re Bestwall LLC*, 71 F.4th 168, 182 (4th Cir. 2023) (emphasis added) (internal quotation marks and citations omitted) ("this Court applies a more comprehensive standard to a request for dismissal of a bankruptcy petition for lack of good faith; that is, the complaining party must show **both** subjective bad faith and the objective futility of any possible reorganization."). The Court finds that both prongs must be met, and are met in this case.

the debtor has one asset; (2) secured creditors' liens encumber the asset; (3) there are generally no employees except for the principals and there is no ongoing business activity; (4) the debtor has little or no cash flow and no available sources of income to sustain a plan of reorganization or make adequate protection payments; (5) there are few, if any, unsecured creditors whose claims are relatively small; (6) there are allegations of wrongdoing by the debtor or its principals; (7) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of secured creditors to enforce their rights; (8) the debtor is afflicted with the "new debtor syndrome" in which a one-asset entity is created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors; (9) there is no realistic possibility of reorganization of the debtor's business; (10) the reorganization is essentially a two-party dispute; and (11) bankruptcy offers the only possibility of forestalling loss of the property. *In re Colonial Warehouse, LLC*, No. 13-00662-dd, 2013 WL 2190162 (Bankr. D.S.C. May 21, 2013) (citing *In re Harmony Holdings, L.L.C.*, 393 B.R. 409, 418-19 (Bankr. D.S.C. 2008)); *see also RCO Inv. Co. v. Belair 301-50 S.W. Quadrant Com. Props., Inc. (In re Belair 301-50 S.W. Quadrant Com. Props., Inc.)*, No. 92-1233, 1992 WL 200849, at *3 (4th Cir. Aug. 17, 1992) (citing *Little Creek Dev. Co.*, 779 F.2d at 1073). In these circumstances, "[r]esort to the protection of the bankruptcy laws is not proper…because there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation." *Id.* (quoting *Little Creek Dev. Co.*, 779 F.2d at 1073).

In *Carolin*, the debtor was a real estate holding company that owned a parcel of land with an industrial building thereon. *Carolin*, 886 F.2d at 695. The debtor had only one secured creditor with a lien on the property through a purchase money promissory note and purchase money deed of trust. *Id.* The debtor defaulted on the note and, fifty minutes before a scheduled foreclosure sale, filed a Chapter 11 petition. *Id.* The evidence suggested that the debtor did not have a current

or prospective source of income through renting the property (which had been damaged by fire and had no prospect of being repaired); the debtor's owners were unwilling to provide the debtor with funds to operate; and the debtor, which had one employee who was not involved in the business, no other significant assets than the property, and no unsecured creditors with substantial claims to suggest ongoing business relationships, was more akin to a shell corporation than a viable business. *Id.* at 702-03.  Accordingly, the Court held that the debtor's bankruptcy was objectively futile. *Id.* at 703.  Further, the Court held that the debtor filed the petition in a subjective bad faith attempt to make a riskless investment rather than rehabilitate the debtor through ongoing investment, as indicated by the debtor's owners' acquisition of the debtor and the debtor's filing for bankruptcy just before the foreclosure sale; the debtor's failure to provide adequate protection to its only secured creditor; and the debtor's failure to repair its property and find a new tenant. *Id.* at 703-05.

Similarly, in *Colonial Warehouse*, this Court dismissed a Chapter 11 case as being objectively futile and filed in subjective bad faith. *Colonial Warehouse*, 2013 WL 2190162, at *8. In that case, the debtor's primary asset was a parcel of real property which was encumbered by a mortgage held by a creditor. *Id.* at *1.  Debtor filed its petition on the last business day before a scheduled foreclosure sale of the property. *Id.* at *2.  Debtor's scheduled unsecured claims were dwarfed by the single secured claim. *See id.* at *3.  During the pendency of the case, the only business the debtor conducted was leasing parking spaces on its real property, generating less income per year than the amount required to service the debt to the secured creditor per month, and the debtor had not had any employees for two or three years prior to filing. *Id.* at *2.  The principal and 100% owner of the debtor testified his plan was to either go into the solar engine business, though he had been unable to do so after trying to obtain a necessary patent for about

14

five years--or build student housing on the property--though he did not have financing for construction in place or building permits. *Id.* The Court found objective futility because the debtor's plans constituted "little more than 'terminal euphoria'" and it was "unreasonable to expect Debtor's creditors to wait any longer for them to come to fruition." *Id.* at *4 (citations omitted). The Court also found the case was filed in subjective bad faith, as there was no business to reorganize or rehabilitate—the debtor having been unable to effectuate its plans prior to bankruptcy—and Debtor's filing of its petition on the last business day before a scheduled foreclosure sale of its property did not indicate good faith. *Id.* at *6. Accordingly, the Court dismissed the case under § 1112. *Id.* at *8.

While each case stands on its own facts, this case shows many of the indicia of a bad faith Chapter 11 filing and closely resembles the situations present in *Carolin* and *Colonial Warehouse*. Debtor owns only the Second Parcels—all largely unimproved and encumbered by Summit Shores' lien. Debtor, with no ongoing business activity, has no employees except for the principals, no cash flow, and no sources of revenue or financing to fund a plan of reorganization. While the Addendum to the Disclosure Statement attaches two letters indicating investor interest in funding the project, the Addendum acknowledges that such funding is contingent on Debtor prevailing in the Adversary Proceedings. The only unsecured creditor of Debtor is the IRS, whose claim is only $500.00. The only secured creditor is Summit Shores. Debtor's filing of this case prior to the imminent entry of an order in the Foreclosure Action granting Summit Shores the right to foreclose, combined with the statements of its principals that this case was filed to invoke the automatic stay and file the Adversary Proceedings—which themselves mirror the issues that have been litigated in State Court for the past decade—evidence an intent to use bankruptcy as the only remaining means of forestalling foreclosure and to use this Court as a preferred forum to litigate a

two-party dispute.  Finally, as explained below, there is no realistic possibility of reorganizing Debtor's business.  The Court concludes that Summit Shores has carried its burden to demonstrate dismissal of this case is warranted under § 1112.

First, the objective futility prong is met, as there is no realistic possibility of an effective reorganization.  At the outset, the Plan is grossly inadequate—and unavoidably so—as it is entirely dependent on the outcome of the Adversary Proceedings.  The Plan provides Debtor will treat the claim of Summit Shores according to the outcome of the two Adversary Proceedings, which will determine the amount of the claim and whether it is secured or unsecured.  In the Plan, Debtor admits, as its principals did at the August 3, 2023 hearing, that Debtor does not have financing for the project in place and would only be able to obtain financing after the Adversary Proceedings are concluded, "as no investor wants to loan money on a project that is currently tied up in litigation."  While the letters attached to the Addendum to the Disclosure Statement indicate investor *interest*, they are not firm funding *commitments*.

Like the debtor's plan in *Colonial Warehouse*, Debtor's project is vaguely described, and there is no concrete financing in place, with potential lenders wary of investing in property tied up in litigation.  The Plan does not provide for clear treatment of Debtor's only secured creditor, and it cannot do so until the Adversary Proceedings are resolved.  Further, there is no realistic possibility of confirming the Plan regardless of which party prevailed in the Adversary Proceedings.  If Summit Shores prevailed in the Adversary Proceedings and its debt was due in full, Watts testified that he "probably could move things around if [he] needed to and get that accomplished."  However, there is nothing in the record to suggest Watts is able and willing[22] to pay Summit Shores' debt, and the scheduled value of the Second Parcels only totals $17.25 million,

---

[22] At the hearing, Watts stated that "[he] would not [pay the debt] because [he feels] it's a very unjust amount."

close to $3.5 million less than Summit Shores' debt, a deficiency which would provide Summit

Shores ammunition to argue for relief from the automatic stay.  It is doubtful lenders would

suddenly see the project as an attractive investment once it is established that there is no equity in

the property.  Meanwhile, if Debtor prevailed in the Adversary Proceedings—and Summit Shores'

debt was deemed satisfied in full—there would be no creditors to pay and no reason for Debtor to

remain in bankruptcy.  Furthermore, the only identified impaired creditor entitled to vote under

the Plan is Summit Shores and, as it stated at the hearing, it does not accept the Plan, thus leaving

Debtor with an unconfirmable plan.  Simply stated, there is no prospect of Debtor obtaining

confirmation of a plan or of Debtor rehabilitating.[23]

The subjective bad faith prong has also been met, as the record indicates Debtor filed the

case merely to invoke the automatic stay to avoid entry of an order in the Foreclosure Action

granting Summit Shores the right to foreclose, and to litigate the claims and defenses in the

Foreclosure Action—which has been pending since 2016 and was near conclusion—in a preferred

forum.  The Master-in-Equity considered the evidence and arguments of Debtor, many of which

have been repeated in the Adversary Proceedings verbatim or close to it, and had indicated that

Summit Shores would be granted the right to foreclose, with the only issue remaining that of

Summit Shores' damages.

Debtor seeks to restart that litigation in this Court, claiming that it would incur less attorney

fees and costs, and that this Court would resolve the matter more expeditiously than the State

Court.  Despite Debtor's arguments to the contrary, seeking what someone may consider a cheaper

and faster forum in which to litigate is forum shopping—not a proper purpose to file for

bankruptcy.  Moreover, Debtor has not shown any plausible reason, in evidence or logic, why

---

[23] This fact, in addition to supporting dismissal of the case, would support granting Summit Shores' pending Motion for Relief from Stay.

attorney fees and costs would be less here than in the State Court.  Debtor's Counsel stated that in

state court, multiple attorneys are often involved, whereas here, he would be the only attorney.

South Carolina state courts, however, do not require parties to employ multiple attorneys.  In fact,

because the litigation would have to be restarted, it is likely attorney fees would be much *higher*

here and the case would take much longer to adjudicate.  Based on the facts of this case and the

record before it, Debtor's arguments ring hollow and lead the Court to conclude that Debtor's

attempt is not to reorganize through the bankruptcy proceeding; rather, its purpose is to relitigate

the same issues that have been pending in state courts for years and that were about to be decided

in Summit Shores' favor.

 Debtor cites cases in its Addendum to Objection to support its contention that many debtors

come into bankruptcy saddled with a large judgment or tied up in ongoing litigation.  While that

is true, the entities in those cases were all what Chapter 11 was designed to protect—an ongoing

business. That is not the case here.  Debtor is not operating—it is simply a shell holding the

Properties saddled with ongoing litigation.  As counsel for Summit Shores stated at the hearing,

bankruptcy is not a place to start a business.  With any attempt at reorganization being objectively

futile and the petition being filed in subjective bad faith, the Court concludes that "cause" exists

to convert or dismiss this case pursuant to 11 U.S.C. § 1112.  Having found cause, the Court

concludes dismissal is in the best interest of creditors and the estate, as this is a two-party dispute.

The Court must now determine whether to retain jurisdiction over the Adversary Proceedings and

the Motion for Sanctions.

## II. RETENTION OF JURISDICTION

 "Bankruptcy judges may hear and determine all cases under title 11 and all core

proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a)

of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C. § 157(b)(1). A claim or proceeding *arises in* a bankruptcy case (and is thus a core proceeding) only when it would have no practical existence but for the bankruptcy, while a proceeding is *related to* a bankruptcy case if such proceeding may in any way affect the administration of the bankruptcy estate. *Meredith v. Wells Fargo Bank, N.A. (In re Meredith)*, No. 10–32366–KRH, 2014 WL 6845444, at *4 (Bankr. E.D. Va. Nov. 26, 2014) (citation omitted). "A proceeding that is related to a bankruptcy case is not a core proceeding. A bankruptcy court may hear such non-core proceedings and (in the absence of the consent of all parties to the proceeding) issue proposed findings of fact and conclusions of law for de novo review by the district court in accordance with 28 U.S.C. § 157(c)(1)." *Id.* The decision whether to exercise "related to" jurisdiction after a case is closed is left to the sound discretion of the Court. *See In re Bartenfelder*, No. 19-18119-NVA, 2023 WL 2746940, at *3 (Bankr. D. Md. Mar. 31, 2023) (citing *In re Lindsey*, 854 F. App'x 301, 307 (11th Cir. 2021); *In re Morris*, 950 F.2d 1531, 1534 (11th Cir. 1992)). "There are four factors courts consider when making this determination: (i) judicial economy, (ii) convenience to the parties, (iii) fairness, and (iv) comity." *In re Meredith*, 2014 WL 6845444, at *4 (citing *Bradley v. Hamlin (In re Bradley)*, No. 07–31896–KRH, 2007 WL 3469721, at *2 (Bankr. E.D. Va. Nov. 14, 2007)). If the Court declines to exercise "related to" subject matter jurisdiction, dismissal is appropriate. *See* Fed. R. Civ. P. 12(h)(3)[24] ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

This Court applied these four factors to determine whether it was proper to retain jurisdiction over an adversary proceeding after the underlying bankruptcy case was closed in the case of *King's Grant Golf Acquisition, LLC v. J.L. Abercrombie (In re T 2 Green, LLC)*, 364 B.R.

---

[24] This rule is made applicable to adversary proceedings by Fed. R. Bankr. P. 7012(b).

592 (Bankr. D.S.C. 2007).  First, the Court concluded judicial economy was served by retaining jurisdiction over the adversary proceeding because the Court had spent considerable time becoming familiar with the facts and the issues and "[i]t would have been unfair to the parties and a waste of resources to have this matter start fresh in another court on the eve of a trial given this Court's background with this matter."  *Id.* at 603.  Second, the Court determined the convenience of the parties was served by retaining jurisdiction given the proximity of the Court to the property that was the subject matter of the adversary proceeding and to the offices of the lawyers involved in the matter.  *Id.* at 604.  Third, the Court found it was fundamentally fair for the Court to retain jurisdiction because the parties challenging the Court's retention of jurisdiction had not made such a challenge prior to the entry of a consent order (to which they objected) resolving the adversary proceeding, and the other parties had expended considerable resources in reliance on the Court resolving the matter.  *Id.*  Finally, the Court held that comity with the state court system was not impaired by the retention of jurisdiction because the matters at issue in the adversary proceeding were not unique matters of state law and there was no indication that discovery had been completed in the parallel pre-petition state court litigation or that it was ready for trial.  *Id.*

The Court will decline to retain jurisdiction over the Adversary Proceedings and will therefore dismiss them.[25]  The Adversary Proceedings—which are based almost entirely on state law—do not arise in the bankruptcy case because their existence does not rely on the bankruptcy, but they are related to the bankruptcy case because their outcome would affect the estate's property and liabilities.  Thus, the Court has "related to" jurisdiction over the Adversary Proceedings.  It would not make sense for the Court to retain jurisdiction over the Adversary Proceedings when it has just concluded that the underlying bankruptcy case, which is inextricably linked to the

---

[25] The Court could also abstain from hearing the Adversary Proceedings under 28 U.S.C. § 1334 given that state law issues predominate.

Adversary Proceedings, represents an abuse of the bankruptcy process. Moreover, the four factors the Court must consider in deciding whether to retain jurisdiction over the Adversary Proceedings counsel against retaining jurisdiction.

Judicial economy would not be served by retaining jurisdiction, as the matters at issue in the Adversary Proceedings have already reached the dispositive stage in the State Court. The convenience to the parties would not be served by retaining jurisdiction, as the Properties are located in Horry County, SC, where the Foreclosure Action is pending. It would be fundamentally unfair to the parties who have expended considerable time and resources litigating the matter in the State Court, reaching the dispositive stage, to retain jurisdiction and restart the litigation from scratch. Finally, comity with the State Court, which has already nearly concluded the litigation, would be better served by the Court declining to retain jurisdiction. Accordingly, the Court will decline to retain jurisdiction over, and will therefore dismiss, the Adversary Proceedings.

However, the Court will retain jurisdiction over the Motion for Sanctions. "A claim under § 362(k) for violation of the automatic stay is a cause of action arising under Title 11," *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 481 (4th Cir. 2015), and is therefore a core proceeding over which the Court has jurisdiction. Additionally, some courts have concluded that bankruptcy courts have *exclusive* jurisdiction over claims for willful violation of the automatic stay. *See, e.g.*, *Halas v. Platek*, 239 B.R. 784, 792 (N.D. Ill. 1999) (concluding that a request for sanctions under § 362(h), the predecessor to § 362(k)(1), is within the exclusive jurisdiction of the bankruptcy court under 28 U.S.C. § 1334(a)).

> It is particularly appropriate for bankruptcy courts to maintain jurisdiction over § 362(k)(1) proceedings because their purpose is not negated by dismissal of the underlying bankruptcy case. They still serve (a) to compensate for losses that are not extinguished by the termination of the bankruptcy case and (b) to vindicate the authority of the statutory stay .... Requiring the dismissal of a § 362(k)(1) proceeding simply because the underlying bankruptcy case has been

dismissed would not make sense. A court must have the power to compensate victims of violations of the automatic stay and punish the violators, even after the conclusion of the underlying bankruptcy case.

*Healthcare Real Estate Partners, LLC v. Summit Healthcare Reit, Inc. (In re Healthcare Real Estate Partners, LLC)*, 941 F.3d 64, 69 (3d Cir. 2019) (quoting *Johnson v. Smith (In re Johnson)*, 575 F.3d 1079, 1083 (10th Cir. 2009)). Since it is not clear that another court would have jurisdiction over the Motion for Sanctions, and dismissal of this case does not obviate the need to enforce the automatic stay by compensating the victims of its violation and punishing its violators, the Court will retain jurisdiction over the Motion for Sanctions.

**IT IS, THEREFORE, ORDERED:**

1. The Motion to Dismiss filed by Summit Shores Lender, LLC is granted, and this case is dismissed pursuant to 11 U.S.C. § 1112;

2. The Court declines to retain jurisdiction over the adversary proceedings filed by Debtor Palmetto Interstate Development II, Inc. against Summit Shores Lender, LLC (Adv. Pro. Nos. 23-80043-eg and 23-80044-eg), and therefore those adversary proceedings are dismissed; and

3. The Court retains jurisdiction over the *Motion for Sanctions for Willfully Violating the Automatic Stay* filed by Debtor Palmetto Interstate Development II, Inc. on July 19, 2023 (ECF No. 45), and the hearing on this Motion will go forward as previously scheduled.

**AND IT IS SO ORDERED.**